(No. 46090.—

TECHNICAL TAPE CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Terry Crain, Appellee.)

*Opinion filed September 27, 1974.*

Burgeson, Laughlin, Cunningham & Smith, of Chicago (Forrest D. Serblin, of counsel), for appellant.

Harris and Lambert, of Marion, for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

This is a direct appeal under Rule 302(a) (50 Ill.2d R. 302(a)) by the employer-respondent, Technical Tape Corporation, from a judgment of the circuit court of Jackson County, which affirmed an award of the Industrial Commission in favor of the employee-claimant, Terry Crain, for temporary disability, partial incapacity and permanent disfigurement under the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, pars. 138.8(c), (d), and (e)).

On January 31, 1969, Terry Crain, who was working on the three-to-eleven p.m. shift at the Technical Tape Corporation, was told to clean the residue from a glue churn. The churn was five feet long, five feet wide, and three feet deep. It had a capacity of approximately 200 gallons and was completely enclosed except for a small opening on the top. The ingredients of the glue included toluene, which is a solvent, resins, and rubber.

When the claimant came out of the churn at 10:45 p.m., after working in it for over a half hour, he testified he felt a burning sensation in his feet and legs. He also felt nauseated. The record shows that after leaving the plant at the completion of his shift the claimant drove his car erratically for about five miles and then ran a stop sign and collided with another car. He suffered a disfigurement of his left ear, a fractured skull, and a partial loss of the use of his right foot.

The only witnesses at the hearing before the arbitrator were the claimant and his father, George Crain, who also was employed at the Technical Tape Corporation. The father testified he saw Terry as he was coming out of the churn after cleaning it. He noticed that there were "two big red streaks on both sides of Terry's neck." He said that he admonished Terry for doing that work because it was his experience that employees who worked in such churns would "get so drunk [they could] hardly get out of them." He testified that at that time Terry told him that he was dizzy and felt ill.

Because he was concerned about his son's condition, George Crain attempted to see Terry again before he left for home. However, upon reaching the parking lot he heard the motor of Terry's auto roar "as loud as it would go" and saw him speed out of the parking lot. He got into his car and began to follow Terry. He said Terry drove through a four-way stop intersection without stopping and minutes later narrowly missed hitting a railroad-crossing gate that was being lowered. Terry's car would have struck

the gate if the crossing guard had not quickly raised it. The gate was re-lowered and the father had to wait for a crossing train to pass. When it did he continued his pursuit of Terry. He drove about five miles and came upon the scene of the collision.

Terry Crain testified that he hardly remembered climbing from the churn. He testified that the last thing he recalled the night of the accident was "clocking out of the plant" shortly after 11 p.m. He said he did not recall anything until he awakened in a hospital two weeks later. The employer did not offer any evidence at the hearing before the arbitrator. The arbitrator found in favor of the claimant and entered an award for 20 3/7 weeks of temporary total compensation, 6 weeks of compensation for the permanent disfigurement of the left ear, 60 weeks of compensation for a fracture of the skull and 85 1/4 weeks of compensation representing 55% permanent loss of the use of the right foot.

Upon the filing of a petition for review by the employer with the Industrial Commission, the deposition of Dr. Host von Paleske, who specializes in orthopedic surgery, was admitted into evidence in behalf of the claimant. Dr. Von Paleske stated that when he examined the claimant shortly before midnight on the night of the accident it was obvious that the claimant had been exposed to a large amount of toluene, because the odor of toluene came not only from his nostrils and mouth but from his skin and hair as well. He said that exposure to toluene for a long period of time could cause dizziness and "almost a drunken-type feeling." Dr. Von Paleske said that toluene produced an effect similar to that caused by alcohol. The respondent did not offer evidence before the Commission.

The decision of the arbitrator was affirmed by the Industrial Commission, but the circuit court of Jackson County remanded the case to the Commission to take additional evidence on the issue of whether the claimant

had given the required notice of accident to Technical Tape Corporation (Ill. Rev. Stat. 1969, ch. 48, par. 138.6(c)).

After taking evidence on remandment, which included testimony by George Crain that he had given notice of his son's accident, the Industrial Commission re-entered an award in favor of the claimant. It was affirmed on *certiorari* by the circuit court.

The determination of factual questions is primarily for the Industrial Commission, and its findings will not be set aside unless they are contrary to the manifest weight of the evidence. *Ford Motor Co. v. Industrial Com.*, 55 Ill.2d 549, 554.

An injury must "arise out of" and "in the course of" employment to be compensable under the Workmen's Compensation Act. *Union Starch v. Industrial Com.*, 56 Ill.2d 272, 275; *Loyola University v. Industrial Com.*, 408 Ill. 139, 143.

"While the phrase 'in the course of employment' relates to the time, place and circumstances of the injury, the phrase 'arising out of the employment' refers to the requisite causal connection between the injury and the employment." (See *Associated Vendors, Inc. v. Industrial Com.*, 45 Ill.2d 203, 205; *Christian v. Chicago & Illinois Midland Ry. Co.*, 412 Ill. 171, 174-175.) In order for an injury to "arise out of" employment it must have had its origin in some risk connected with, or incidental to, the employment, so that there is a causal connection between the employment and the injury. *Union Starch v. Industrial Com.*, 56 Ill.2d 272, 275; *Material Service Corp. v. Industrial Com.*, 53 Ill.2d 429, 433; *Chmelik v. Vana*, 31 Ill.2d 272, 277.

Professor Larson, in The Law of Workmen's Compensation, has observations which have relevance to this case. He comments:

"*** [I]n Workmen's Compensation the controlling event is something done *to,* not *by,*

the employee, and since the real question is whether this something was an industrial accident, the *origin* of the accident is crucial, and the moment of manifestation should be immaterial. \*\*\*

\* \* \*

\*\*\* [The Act] does not say that the injury must 'occur' or 'be manifested' or 'be consumated' in the course of employment. It merely says that it must 'arise \*\*\* in the course of employment.' 'Arising' connotes origin, not completion or manifestation. If a strain occurs during employment hours which produces no symptoms, and claimant suffers a heart attack as a result sometime after working hours, the injury is compensable." 1 A. Larson, The Law of Workmen's Compensation, sec. 29.22.

Dr. Von Paleske testified here that if a person were exposed to toluene for any length of time, it would be absorbed into the blood stream, the lungs and eventually into the fatty tissues, which could "cause a feeling of dizziness, almost a drunken-type feeling." He further testified that it was obvious that the claimant had been exposed to and had absorbed a high concentration of toluene. There was uncontradicted evidence that when the claimant had finished cleaning the churn he was dizzy and sick to his stomach. He behaved erratically and then drove his car bizarrely and recklessly before he was involved in the collision.

The evidence showed that the claimant's intoxication was a result of his cleaning the churn and that the injuries sustained in the collision had their origin in the intoxication. It cannot be reasonably said that the Commission's finding that the claimant's injuries arose out of and in the course of his employment was contrary to the manifest weight of the evidence.

In another argument Technical Tape contends the

circuit court committed error when it remanded the case to the Commission to hear additional evidence on the issue of notice. It is argued that the court should have decided in its favor when the court determined that the claimant had not satisfactorily established that he gave the required notice of the accident to his employer (Ill. Rev. Stat. 1969, ch. 48, par. 138.6(c)).

However, section 19 of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.19(f)(2)) provides in part that the circuit court on review "may confirm or set aside the decision of the Commission. If the decision is set aside and the facts found in the proceedings before the Commission are sufficient, the court may enter such decision as is justified by law, or may remand the cause to the Commission for further proceedings and may state the questions requiring further hearing, and give such other instructions as may be proper." See *Thompson v. Industrial Com.*, 377 Ill. 587; *National Zinc Co. v. Industrial Com.*, 292 Ill. 598, 604.

The remand was especially appropriate because the Commission improperly refused to allow the claimant to present evidence on the question of giving notice. Section 19 of the Act provides: "If a petition for review *** is filed, as provided herein, the Commission shall promptly review the decision of the Arbitrator *** and all questions of law or fact which appear from the *** transcript of evidence, and such additional evidence as the parties may submit." Ill. Rev. Stat. 1969, ch. 48, par. 138.19(e).

In *Mead v. Industrial Com.*, 48 Ill.2d 215, 220-221, we said: "The jurisdiction of the Commission to review the evidence taken before the arbitrator and to consider any further evidence properly presented to it is original as opposed to appellate jurisdiction. Such a review is neither a trial *de novo* nor simply a review of the record, but is *sui generis*. The award of the arbitrator becomes final by its entry upon the records of the Commission if it is not contested. If it is contested before the Commission, the

jurisdiction of the Commission to review is original jurisdiction." See *Martin Young Enterprises, Inc., v. Industrial Com.*, 51 Ill.2d 149, 154-155.

Technical Tape next argues that the claimant did not prove that he gave notice of the accident within the 45 days required under the statute.

On remandment, George Crain testified that he told his son's supervisor, Dwight Mason, on February 1, 1969, that Terry's automobile accident was caused by the fumes he inhaled while cleaning the glue churn. He further testified that Bill Elders, another employee, overheard the conversation.

While Dwight Mason said that he learned about Terry's accident minutes after it occurred he said he did not recall that George Crain told him that it was caused by inhaling toluene fumes. Bill Elder testified that he did not recall overhearing the alleged conversation.

It is the function of the Commission to determine the credibility of the witnesses, and its determination will not be set aside unless it is against the manifest weight of the evidence. (*B. F. Gump Co. v. Industrial Com.*, 411 Ill. 196, 198; *Brown Shoe Co. v. Industrial Com.*, 374 Ill. 500, 503-504.) We cannot say that the Commission's finding that the required notice was given is contrary to the manifest weight of the evicence.

For the reasons given, the judgment of the circuit court is affirmed.

*Judgment affirmed.*