R. J. REYNOLDS TOBACCO COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Kenneth W. Volz, Appellee).

Third District (Industrial Commission Division)    No. 3—84—0390WC

Opinion filed May 17, 1985.

David B. Mueller, of Cassidy & Mueller, of Peoria, for appellant.

Robert W. Scott, of Swain, Johnson & Gard, of Peoria, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The petitioner, Kenneth Volz, filed a claim under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*) for injury he sustained while an employee of the respondent, R.J. Reynolds Tobacco Company (the company). The sole issue on appeal is whether the Industrial Commission (the Commission) improperly found that the petitioner's injury arose out of and in the course of the petitioner's employment with the company.

The arbitrator found that the injury arose out of and in the course of the petitioner's employment. The arbitrator then awarded the petitioner accrued compensation, medical expenses, and temporary total disability. On review, the Commission adopted and affirmed the arbitrator's decision. The circuit court of Peoria County confirmed the decision of the Commission. The company brings the instant appeal. On appeal, the company argues that the petitioner's injuries neither arose out of nor occurred in the course of his employment. We affirm.

The basic facts are not in dispute. On July 1, 1980, the petitioner was a 20-year employee of the company. He was employed by the company as an area sales representative. As part of his job, the petitioner set up retail display racks in his Knox, Fulton, and Peoria County territory. Apparently, the petitioner regularly began his workday by going directly from his Tazewell County home to the first retail site he planned to visit that day. The company required that the petitioner be at his first work site by 8 a.m. and that he not leave his assignments, whether at the company's warehouse office or some remote site, until 5 p.m. Occasionally, the petitioner used his own power tools at his home to cut and drill wood, particle board, masonite, and metal for customizing display racks for the company's products. The petitioner testified that his radial power saw was the only tool he would use to guarantee quality workmanship for the customized racks. The company provided the petitioner with workspace at the warehouse office but did not provide the petitioner power tools.

The petitioner's supervisor testified that the petitioner was required to obtain permission to do work at home. However, the petitioner testified, and the supervisor acknowledged, that on several occa-

sions the petitioner had worked at home without advance permission. After those incidents, the supervisor reminded the petitioner of the requirement of advance permission for work at home. When the petitioner's work at home caused him to work more than his regular hours, his supervisor authorized him to take off time at the end of the week.

On the date of the petitioner's accidental injury, the petitioner started the day by going to the company's Peoria office. That, according to the petitioner, was an unusual beginning for his workday. From there he drove to two stores in his territory. At approximately 3:30 p.m., he returned back to the office. He then placed in his company car materials to customize a display rack. The petitioner intended to use his power tools at home to customize the rack. His supervisor had asked him to help another salesman set up the rack at a Tazewell County store outside the petitioner's territory. The rack was to be set up on the morning of July 2, 1980. There is no indication that the petitioner was expected to report on July 2 to the company's Peoria County office prior to driving from his Tazewell County residence to the Tazewell County store.

With the display rack materials in his company car, the petitioner drove home from his office at about 3:45 p.m. Before leaving the office the petitioner had not received permission to alter his normal work hours or to work at home. There is no evidence that the petitioner attempted to request such permission before going home. There also is no evidence that the petitioner's supervisor would have been available to respond to such a request.

The petitioner took what he determined to be the quickest and most direct route. En route, his car was struck in the rear by another auto. The petitioner was awarded compensation under the Act for injuries he sustained in the auto accident, and the company brought this appeal as aforesaid.

The company first argues that the petitioner's injuries did not arise out of his employment. According to the company, at the time of the accident during his drive home on July 1, the petitioner was not subject to a risk peculiar to his employment. The company next argues that under the "dual-purpose doctrine" (see *Gmelich v. Industrial Com.* (1980), 81 Ill. 2d 44, 405 N.E.2d 786), the principal purpose of the petitioner's trip was personal, *i.e.*, to return home at the end of his workday. The company additionally argues that at the time of the accident the petitioner was not in the course of his employment. According to the company, the petitioner was not working for the benefit of or under the control of the company at the time of the accident. Lastly, the company argues that, even if at the time of the accident here the petitioner

was in transit from one workplace to another, his trip was not employment activity and was not compensable.

The petitioner, on the other hand, argues that he was a traveling employee in the course of his employment from the time he left home at the start of the workday until he returned home at the day's end. The petitioner compares his status to the traveling employee in *Urban v. Industrial Com.* (1966), 34 Ill. 2d 159, 214 N.E.2d 737. He thus asserts that his travel to and from work was in the course of his employment. Furthermore, according to the petitioner, his trip here was not rendered uncompensable by the "dual-purpose doctrine" considered in *Gmelich.* Rather, the petitioner argues that his trip home arose out of his employment, as it was made necessary by special requirements of his employment and for the accommodation of the employer.

In determining whether an accidental injury is compensable under the Act, courts generally will regard an employee whose work requires travel away from his employer's office differently from other employees. (*Hoffman v. Industrial Com.* (1984), 128 Ill. App. 3d 290, 470 N.E.2d 507.) Nevertheless, in order for an accidental injury to be compensable under the Act, it is necessary that it was sustained "arising out of" and "in the course of" the petitioner's employment. (Ill. Rev. Stat. 1979, ch. 48, par. 138.2; 128 Ill. App. 3d 290, 470 N.E.2d 507.) The question of whether an injury "arose out of" a petitioner's employment depends upon whether there is a causal connection between the injury and the petitioner's employment. *Technical Tape Corp v. Industrial Com.* (1974), 58 Ill. 2d 226, 317 N.E.2d 515.

Whether an injury occurs "in the course of" employment depends upon the time, place, and circumstances of the injury. (*Eagle Discount Supermarket v. Industrial Com.* (1980), 82 Ill. 2d 331, 412 N.E.2d 492.) The inquiry into whether an employee's injury is "in the course of his employment" considers whether the injury arises out of acts which his employer instructs him to perform, acts which are his common law or statutory duty while performing for his employer, or acts which he might be reasonably expected to perform incident to his assigned duties. *Ace Pest Control, Inc. v. Industrial Com.* (1965), 32 Ill. 2d 386, 205 N.E.2d 453.

The company's cited authorities are all readily distinguishable on the facts. We address briefly, however, the respondent's reliance on *Gmelich.* That the petitioner served his personal as well as the company's interests in his drive home does not militate against compensability. There is evidence here upon which the Commission could conclude that the petitioner's early drive home was made primarily to serve the company's purpose. Furthermore, the company offers and we are

aware of no authority for the proposition that trips to and from work having both a business and personal purpose are not compensable unless the business purpose is paramount.

The instant petitioner makes his claim under circumstances different from those in *Urban*, where coverage under the Act was recognized for the traveling salesman petitioner killed while driving away from his office. Nevertheless, here it is not disputed that the petitioner does travel for his employment. Here, after making calls in his company car, the petitioner left his office at 3:45, before the regular 5 o'clock end of his workday. The petitioner's early drive home was explained by the petitioner's determination that on the day of the accident he needed to spend time in his home workshop preparing materials the company wanted installed the next day. Additionally, at the time of the accident the petitioner was using his company car to transport company materials for the company's benefit.

Furthermore, the petitioner's transport of the necessary materials home during regular work hours was both reasonable and foreseeable, notwithstanding the company's policy requiring advance permission for work at home. The petitioner was assigned to assist another salesman to set up, on July 2, a customized display rack. The company was aware that the petitioner previously had done custom work for the company with his tools at home. The company knew that the petitioner occasionally had done its customizing work at home during regular work hours and without advance permission. The company provided no tools comparable to the petitioner's tools at home. Finally, the petitioner's power tools were not easy to transport for work at the company's premises, and there is no indication that the petitioner ever did transport or was requested to transport the tools to work there.

Although we would not find compensable every accidental injury that might have occurred after the plaintiff left his office until he completed work on the company's display rack, the Commission's findings here that the petitioner's injury arose out of and in the course of the petitioner's employment were not against the manifest weight of the evidence.

Based on the foregoing, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

WEBBER, P.J., and SULLIVAN, LINDBERG, and KASSERMAN, JJ., concur.