PETROS PANAGOS, d/b/a Olympic Flame Supper Club, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Jasmin Dursun, Appellant).

First District (Industrial Commission Division)   No. 1—87—1713WC

Opinion filed May 18, 1988.

McCULLOUGH, J., dissenting.

August M. Mangoni, Ltd., of Chicago (August M. Mangoni and Louis G. Atsaves, of counsel), for appellants.

Terrance J. VanDriska and Mark A. Potter, both of Chicago, for appellee.

JUSTICE CALVO delivered the opinion of the court:

Claimant, Jasmin Dursun, filed an application for adjustment of claim under the Workers' Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*), alleging that the injuries she sustained in an automobile accident arose out of and during the course of her employment with the Olympic Flame Supper Club. After a hearing, the arbitrator awarded claimant $200 per week for life for a total permanent disability. (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(f).) This determination was affirmed by the Industrial Commission; however, the circuit court reversed the Commission, finding that claimant's injuries did not occur during the course of employment. Claimant appeals, alleging that the circuit court erred in reversing the Industrial Commission's determination. The facts are as follows.

Shortly after leaving her place of employment at approximately 4 a.m. on January 10, 1978, claimant lost control of her automobile on outer Lake Shore Drive in Chicago, Illinois, and struck two parked cars. She sustained a broken neck and other less serious injuries. The nature and extent of claimant's disability is not at issue. The facts relevant to the issue of causal connection are as follows.

Claimant, a 36-year-old woman of Turkish descent, worked for the employer as a professional belly dancer five nights per week for about five weeks prior to the incident. Her hours were from about 9

p.m. to 4 a.m., with two performances of about 20 minutes duration to take place at 10 p.m. and 2 a.m. In between performances she was to socialize with the employer's customers. Although the employer did not buy claimant's drinks, the employer did not prohibit claimant from drinking alcoholic beverages while socializing. Claimant indicated in her testimony that she was encouraged by the employer to drink alcohol which was bought for her by the employer's patrons. The employer denied that claimant was encouraged to drink alcohol. It is undisputed that the profit made from all drinks went exclusively to the employer.

Claimant testified that prior to dancing on the night and early morning in question the employer introduced her to several customers as the restaurant's belly dancer. According to claimant, the employer further stated "[y]ou told me to bring her up here. We all have a drink, so here we are." Claimant then sat down with these customers, who called a waiter to the table. When asked what she wanted to drink claimant said champagne, so champagne was ordered. After drinking four or five glasses of champagne with the customers, claimant went to her dressing room to prepare for her 10 p.m. dance.

After dancing, claimant changed clothes and went back into the dining area, where she saw the employer. Claimant asked the employer if she should go back to the same table where she was sitting before and he said no, there are two or three other tables of customers who wanted her to sit with them. Claimant then sat with these customers, eating lobster tail and drinking several more glasses of champagne. When it came time for claimant's 2 a.m. dance, she left the dining area for her dressing room. While in the dressing room the employer knocked on the door and told claimant that she did not have to dance. Upon entering the dining room again, claimant asked the employer where she should sit. The employer told her that she should sit with the people with whom she sat prior to the first dance. Claimant testified that she ate lobster and drank several more glasses of champagne with these customers until closing time.

Claimant testified that she remembered the employer asking her while she was in her car getting ready to leave if she wanted a ride home. Claimant said "Thank you, Petros (the employer). I appreciate it" and drove off. All claimant could remember after this was driving away from a vehicle which was following her at a high rate of speed. Claimant related that the employer or one of his employees had on several prior occasions given claimant rides home after she had drank liquor.

Petros Panagos, the employer, testified that he never directed claimant to sit with specific customers and that on the night and early morning in question claimant was seated with her friends. Claimant's friends were also Panagos' customers. Panagos further testified that he had given claimant one ride home during her period of employment and that this ride was given because claimant did not have her own transportation. Panagos denied ever instructing any of his employees to give claimant a ride home. In a discovery deposition from a related dramshop case Panagos admitted that he had seen claimant drinking liquor during the night and early morning in question. Panagos could not recall whether he thought claimant was intoxicated when she left.

The purpose of the Illinois Workers' Compensation Act is to protect the employee against risks and hazards which are peculiar to the nature of the work he is employed to do. An injury is compensable under the Act only if it "arises out of" and "in the course of" employment. Both elements must be present at the time of the accidental injury in order to justify compensation. (*Orsini v. Industrial Comm'n* (1987), 117 Ill. 2d 38, 44-45, 509 N.E.2d 1005, 1008.) An injury "arising out of" one's employment may be defined as one which has its origin in some risk so connected with, or incidental to, the employment as to create a causal connection between the employment and the injury. (117 Ill. 2d at 45, 509 N.E.2d at 1008.) An injury is "in the course of" employment when it occurs within the period of employment, at a place where the employee can reasonably be expected to be in the performance of his duties, and while he is performing those duties or something incidental thereto. (*Segler v. Industrial Comm'n* (1980), 81 Ill. 2d 125, 128, 406 N.E.2d 542, 543.) Acts of personal comfort are generally held to be incidental to employment duties and, thus, are in the course of employment. However, if the employee voluntarily and in an unexpected manner exposes himself to a risk outside any reasonable exercise of his duties, any injury incurred as a result will not be within the course of employment. (81 Ill. 2d at 128, 406 N.E.2d at 543.) The term "employment" contemplates not only actual work time, but a reasonable time before commencing and after concluding actual employment. (*Christman v. Industrial Comm'n* (1987), 159 Ill. App. 3d 479, 482, 512 N.E.2d 804, 806.) Furthermore, an automobile accident which occurs off the employer's premises but which originates from the employment is compensable. See *Technical Tape Corp. v. Industrial Comm'n* (1974), 58 Ill. 2d 226, 317 N.E.2d 515.

In the instant case claimant was employed to dance two 20-min-

.ute shows and to socialize with customers before, during and after dancing. Although she may not have been verbally encouraged by her employer to drink liquor with customers, she was not discouraged from doing so. Moreover, the drinks she drank and the food she ate while socializing were paid for by the customers, with the profits going exclusively to the employer. It is undisputed that on the night in question claimant was drinking liquor and that the employer had knowledge of this fact. The record further indicates that claimant left work at about 4 a.m. and was brought into a hospital emergency room at 4:51 a.m. Although the medical records do not indicate whether claimant had alcohol in her bloodstream at the time of admission, her testimony, if believed, would form a proper basis for a conclusion that there was.

It is the province of the Industrial Commission to judge the credibility of witnesses, draw reasonable inferences from the evidence, and determine the weight evidence is to be given. (*Steiner v. Industrial Comm'n* (1984), 101 Ill. 2d 257, 260, 461 N.E.2d 1363, 1364.) On the basis of the above evidence the Commission properly could find: (1) that the auto accident arose out of claimant's employment by virtue of the fact that claimant had been drinking liquor prior to the accident with the tacit approval of her employer, and (2) that the accident occurred during the course of claimant's employment because her incidental act of personal comfort (drinking liquor) was not unexpected and resulted in a reasonably foreseeable end result (drunkenness and an auto accident) which occurred within an hour after her leaving work. Thus, the Industrial Commission properly found that claimant was "employed" at the time she sustained her injuries.

The judgment of the circuit court reversing the Commission's determination that claimant was entitled to benefits is therefore reversed, with claimant's award reinstated.

Reversed and award reinstated.

BARRY, P.J., and McNAMARA and WOODWARD, JJ., concur.

JUSTICE McCULLOUGH, dissenting:

As the trial court pointed out, the petitioner has the burden of proving that the accident arose out of and in the course of her employment. The evidence is sufficient for the Commission to find that the employee's drinking of alcohol was incidental to her duties. This does satisfy the requirement that the accident arise out of the peti-

tioner's employment. There is a complete absence of evidence, however, that the accident arose in the course of her employment. The employee was not in the status which required travel as a part of her job. She was not on any special mission for the employer at the time of the accident. And, likewise, she was not engaged in any recreational activity as a part of her employment at the time of her accident.

Liability cannot rest upon imagination, speculation or conjecture. The employee did not produce any of her friends whom she was with during the hours of her employment. Nor did she produce the witness who followed her in her motor vehicle, a boyfriend by the name of Louie. The record is clear that no witness testified that she was intoxicated or that she had any of the characteristics of an intoxicated person.

In *Technical Tape*, the employee produced eyewitness testimony that the employee was dizzy and under the effect of some substances when he was still on the premises of the employer. There also was medical testimony on causal connection that the substances could cause intoxication and in fact did cause intoxication of the employee.

Not only was no evidence presented concerning the employee's intoxication in this case, but the police reports of the accident show no evidence of intoxication. Likewise, the medical records and reports show no abnormal alcohol content in the employee's blood. Inasmuch as she failed to provide any witnesses to show that she was intoxicated while on the premises of her employer, her application for adjustment of claim must fail.

There simply is no proof of causal connection between her employment and the injuries she sustained in the accident while driving her personal motor vehicle after her employee status ended on January 10, 1978.