**Roger MUNIE, Plaintiff,**

v.

**STAG BREWERY, DIVISION OF G. HEILEMAN BREWING CO., INC., and Allen J. Lacombe, Defendants.**

No. 88–3834.

United States District Court, S.D. Illinois.

June 26, 1990.

See also 131 F.R.D. 559.

Steven C. Buser, Belleville, Ill., for plaintiff.

Daniel R. Begian, St. Louis, Mo., for defendants.

## MEMORANDUM AND ORDER

STIEHL, District Judge:

Before the Court is defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Plaintiff has filed a response to defendants' motion, and defendants have filed a reply brief.

The defendants assert that Count I is subject to the exclusivity provisions of the Illinois Workers' Compensation Act. Defendants further assert that Counts III and IV of the complaint should be dismissed because (1) they are subject to disposition via the Arbitration and Grievance Procedure of plaintiff's union, (2) plaintiff failed to exhaust administrative/contractual remedies, and (3) plaintiff failed to state a claim upon which relief may be granted. Count II has previously been stricken pursuant to Fed.R.Civ.P. 12(f) on grounds of redundancy.

■ The Court must first determine whether Count I is subject to the exclusivity provision of the Illinois Workers' Compensation Act (Act), Ill.Rev.Stat. ch. 48, para. 138.11 (1987), and, therefore, preempted.

Section 5 of the Act provides, in pertinent part:

> [N]o common law or statutory right to recover damages from the employer ... for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act....

Therefore, where an injury arose out of and in the course of employment, the Act serves as the employee's exclusive remedy. *Rhodes v. Industrial Comm'n*, 92 Ill.2d 467, 66 Ill.Dec. 83, 85, 442 N.E.2d 509, 511 (1982).

In order for an injury to be compensable under the Act, the "injury must 'arise out of' and 'in the course of' employment." *Technical Tape Corp. v. Industrial Comm'n*, 58 Ill.2d 226, 317 N.E.2d 515, 517–18 (1974). For an injury to "arise out of the employment," there must be a "causal connection between the employment and the injury." 317 N.E.2d at 517–18. "[T]he phrase 'in the course of employment' relates to the time, place and circumstances of the injury." 317 N.E.2d at 517.

The Illinois Supreme Court has held:

144

It is well settled that an injury accidentally received by an employee on the premises of his employer while going to or from his place of employment by a customary or permitted route, within a reasonable time before or after work, is received in the course of and arises out of his employment.

*M & M Parking Co. v. Industrial Comm'n*, 55 Ill.2d 252, 302 N.E.2d 265, 268 (1973).

Plaintiff cites the Illinois case of *Martin v. Kralis Poultry Co.*, 12 Ill.App.3d 453, 297 N.E.2d 610 (1973), as controlling authority on the applicability of the Act. In *Kralis*, the court recognized that an injury must arise out of and occur during the course of employment, and so ruled that plaintiff, a plant worker who was injured when she returned to the plant to pick up her husband three hours after she had clocked out, was not injured by an event that had arisen out of her employment, and was, therefore, not precluded from seeking a common law recovery.

The instant case is clearly distinguishable from *Kralis*. In this case, plaintiff was walking from his job site to his car to drive home from work. The injury occurred four minutes after his shift had ended. "But for" plaintiff's employment, this injury would not have occurred. The injury "arose out of" plaintiff's employment, because plaintiff's injury allegedly occurred while plaintiff was walking down stairs he needed to descend to reach his automobile to leave his job site. The injury occurred "in the course of" plaintiff's employment, because of the propinquity in time between plaintiff's clocking out from work and plaintiff's alleged injury. In *Kralis*, plaintiff's injury occurred several hours after she had left the job site, and did not occur in circumstances that were unique to her employment. When circumstances such as those in *Kralis* exist, then the applicability of the Act is a question of fact that must be left to a jury to decide. 297 N.E.2d at 617. However, when, as here, the plaintiff's complaint clearly establishes the requisite employer/employee relationship at the time of the injury, and where plaintiff has already filed a complaint in state court seeking recovery under the Act, the Act's exclusivity provision precludes this Court from hearing this case.

■ The defendants also seek dismissal of Count III, directed to Stag, and Count IV, directed to Lacombe. In these counts, based on breach of contract, plaintiff seeks severance pay, three months free medical and health insurance coverage, along with damages for emotional distress. The benefits which plaintiff seeks are derived from the employer-union negotiated collective bargaining agreements entitled "Articles of Agreement" and "Termination Agreement." These provide, among other things, that (1) as a prerequisite for receiving severance pay, all employees must sign a form releasing the defendant from all claims against the corporation, and (2) that in the event of a dispute, "either party may submit the issue to arbitration" as provided in the collective bargaining agreement. The Court must, therefore, review the collective bargaining agreement with respect to the issue of whether plaintiff was required to exhaust the administrative remedies available to him before he could institute the suit.

The action is governed by sec. 301 of the Labor Management Relations Act, 29 U.S.C. sec. 185. When an action falls under sec. 301, the plaintiff must exhaust his administrative remedies before he can seek adjudication in the courts. *Republic Steel v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Clayton v. International Union*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981).

In the case at bar, an administrative remedy is available in that a grievance procedure is contained in the collective bargaining agreements. The issue of whether a dispute is subject to the grievance procedure of the collective bargaining agreements is a question of law for the Court to decide, and any doubts are to be resolved in favor of the grievance procedure. *See International Union of Operating Eng'rs v. Flair Builders*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972); *Atkinson v. Sinclair Refining*, 370 U.S. 238, 82 S.Ct. 1318,

8 L.Ed.2d 462 (1962). Here, the Court finds that Counts III and IV of plaintiff's complaint are subject to the grievance procedure contained in the collective bargaining agreement entitled "Articles of Agreement" that was ratified by the Belleville Division, G. Heileman Brewing Company (referred to as Stag Brewery in the instant complaint), and Local Union # 101 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada. According to Article 6 of this agreement, the grievance procedure is to be used to settle "any controversy or dispute as to the meaning or application of any of the provisions of this Agreement."

In defendants' motion to dismiss and/or alternatively motion for summary judgment, an affidavit from defendant Lacombe has been attached. Lacombe was, during the period in which the incident took place, the plant manager of defendant brewery. In this capacity, he participated in the negotiations between defendant corporation and the representative unions, and was a party to the Termination Agreement that was a product of these negotiations. According to Lacombe's affidavit, plaintiff is a member of the bargaining unit covered by the aforesaid agreement. The affidavit also states that the Termination Agreement "allows that any dispute as to the meaning, application, or interpretation of the Termination Agreement may be submitted to arbitration in a manner provided for in the collective bargaining agreement." Finally, the affidavit states that "at no time did plaintiff Roger Munie file a grievance pursuant to the terms of the Collective Bargaining Agreement or Termination Agreement seeking severance pay and/or three (3) months free medical and health insurance coverage."

In his response to defendants' motion, plaintiff asserts that the "futility exception" discussed by the Seventh Circuit in D'Amato v. Wisconsin Gas Co., 760 F.2d 1474, 1488 (7th Cir.1985), exempted him from the grievance procedure. This assertion is clearly without merit. The futility exception has been successfully used in situations where attempts to exhaust contractual remedies have been made and failed. In the instant case, as in D'Amato, plaintiff has neither complained to, nor attempted to enlist the help of, his union in resolving the dispute. "Consequently he has not demonstrated that initiation of formal grievance procedures would be futile." Id.

The Court finds, therefore, that Counts III and IV are subject to dismissal for failure to exhaust administrative remedies. Therefore, the Court GRANTS defendants' motion to dismiss for failure to exhaust administrative remedies. Counts III and IV of plaintiff's complaint are, accordingly, DISMISSED.

## CONCLUSION

In summary, the Court GRANTS defendants' motion to dismiss Count I for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1), and Count I is, accordingly, DISMISSED. The Court also GRANTS defendants' motion to dismiss Counts III and IV for failure to exhaust administrative remedies and Counts III and IV are, accordingly, DISMISSED. Plaintiff is granted leave to file an amended complaint within twenty (20) days.

IT IS SO ORDERED.