MICHAEL KOCHILAS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Certified Painting Company, Appellee.)

First District (Industrial Commission Division)    No. 1—94—3488WC

Opinion filed August 11, 1995.

RAKOWSKI, J., joined by McCULLOUGH, P.J., dissenting.

Kusper & Raucci, Chartered, of Chicago (Mark R. Slavin, of counsel), for appellant.

Grant, Gentry & Benzing, of Lisle, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Michael Kochilas, sought benefits pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1991, ch. 48, par. 138.1 *et seq.*) for injuries sustained in the early morning hours of December 2, 1991, while in the employ of Certified Painting Company. The arbitrator awarded claimant benefits. On review, the Industrial

Commission (Commission) reversed the decision of the arbitrator, finding claimant's injuries did not arise out of his employment. The circuit court of Cook County confirmed the decision of the Commission. Claimant appeals, contending the decision of the Commission as confirmed by the circuit court is against the manifest weight of the evidence. We agree and, accordingly, reverse the decisions of the circuit court and Commission and reinstate the award of the arbitrator.

At the time of his injuries, claimant had been employed by Certified Painting (employer) for 19 years as a painter. For the past several months, claimant had been acting as a supervisor for a crew of four whose job assignment was to paint Chicago Transit Authority (CTA) subway stations. Claimant's hours were from 9 p.m. to 5 a.m. Because he and his crew previously had been attacked and robbed while working in the subway system, claimant regularly brought his Labrador retriever to the work site for protection. Claimant had been bringing his dog with him to work for the past eight years with employer's approval. Claimant had never encountered any objections to the dog's presence in the CTA system until December 2, 1991.

On December 2, 1991, according to claimant, claimant was returning to the subway station at 1:30 a.m. after his lunch break. As he walked toward his crew, two black men dressed like bums approached him and asked him if the dog belonged to him. One of the men pulled out a badge and told him to get the dog out of there. Claimant informed the men the dog was there to protect the crew. One of the men, using profanity, told claimant to get the dog out of the area or go to jail. Claimant put the dog in a nearby janitorial utility closet and turned around to get the names of the men. One of the men came up behind him, took his left hand and put handcuffs on it. Claimant resisted and was knocked down. Claimant momentarily lost consciousness and started shaking with pain. One of the officers grabbed claimant by the neck while the other stepped on his back to put the handcuffs on. The officers then lifted claimant from the arms/shoulder area and carried him off the platform. Claimant was taken to the police station and then the hospital for treatment of his injuries.

According to the testimony of Curtis Danzy, one of the arresting officers, claimant's dog had been growling at passengers. The other officer, Isaac Cotton, asked the crew to whom the dog belonged. No one responded until the officer said he was going to have the dog removed. The men then informed the officers the owner would be back shortly. As claimant approached the crew, the officers approached claimant to order him to take the dog away. Claimant

informed them the dog was there for protection, especially because the police were never around. Officer Cotton again ordered claimant to remove the dog to which claimant responded negatively. Officer Cotton gave claimant two choices: remove the dog or be arrested. Claimant said he would take the dog away and proceeded to take him to a storage closet some 20 feet away. Officer Cotton told him that was not good enough and attempted to handcuff claimant. Claimant resisted. Officer Danzy remarked claimant should just let Officer Cotton put the cuffs on him. Claimant, however, continued to resist. Officer Danzy grabbed claimant by the shoulders at which point claimant called out for help from his fellow employees, shouting the men were not police. Eventually all three men fell onto the ground. After wrestling with claimant a little longer, Officer Cotton was able to handcuff both of claimant's wrists. The officers then lifted claimant onto his feet and escorted him out of the station. Claimant was arrested for disorderly conduct, but the charge was not pursued.

Officer Cotton related the same version of the incident up to the point of attempting to handcuff claimant. Officer Cotton testified he reached for claimant's arm to put the handcuffs on. Claimant told him to let go and grabbed Officer Cotton's wrist. At that point Officer Danzy came to his assistance. They then "dumped" claimant to the ground to subdue and cuff him. Claimant continued to struggle until they picked him up and escorted him out of the platform area.

■ Under the Act, an injury is compensable only if it "arises out of" and "in the course of" employment. (*Orsini v. Industrial Comm'n* (1987), 117 Ill. 2d 38, 44-45, 509 N.E.2d 1005, 1008; *Panagos v. Industrial Comm'n* (1988), 171 Ill. App. 3d 12, 15, 524 N.E.2d 1018, 1020.) When, however, there is no causal connection between the injury and the character or conditions of the employment, or the employee is injured as a result of his stepping outside the scope of employment, protection of the Act cannot be invoked. (*Fischer v. Industrial Comm'n* (1951), 408 Ill. 115, 118-19, 96 N.E.2d 478, 481; *Armour & Co. v. Industrial Comm'n* (1947), 397 Ill. 433, 437, 74 N.E.2d 704, 706.) The question here is whether claimant stepped outside the scope of his employment. The arbitrator concluded claimant's arrest was a consequence of having his dog on the CTA platform, and because claimant was authorized to have his dog on the platform for protection, the risk of injury arose out of an authorized activity and therefore was compensable. The Commission, on the other hand, determined claimant stepped outside the scope of his employment in deliberately defying a lawful request from the police officers, thereby subjecting himself to a risk which was not part of his employment. The Commission further concluded claimant's testimony was not

credible in that he was fully aware he was talking to plainclothes police officers the entire time.

■ The arbitrator was correct in concluding claimant was authorized to have his dog with him at work. The painting crew's hours and location subjected them to a greater risk to their personal safety than the average painting crew. The men had been attacked in the past and needed additional protection. Claimant, with the approval of his employer, had been bringing his dog to the various work sites for some eight years without incident. The crew had been painting on the CTA platforms for over six months without encountering any authority figure ordering them to remove the dog. Under such circumstances, we cannot say claimant was engaged in an unauthorized activity when Officers Cotton and Danzy arrived. And, we cannot say claimant was the aggressor in this situation. He did not attack the officers and, in his mind, did comply, albeit reluctantly, with their orders to remove the dog from the platform. What claimant did do was resist arrest. The Commission concluded claimant knew the men were police officers from the beginning. We, however, do not find sufficient support in the record for such a conclusion. Instead, the record reveals claimant was not certain as to whom he was dealing with. The incident occurred at 1:30 in the morning in a CTA tunnel where claimant and his crew had already been attacked once. No one in authority ever questioned the presence of claimant's dog until that night, even though claimant had been bringing the dog into the tunnels for many months. The officers were dressed like bums and responded with profanities when claimant initially refused to remove his dog. This is not the reaction one would normally expect from police officers under the circumstances. Claimant confined his dog in a nearby closet in order to speak to the unknown men and get their names and badge numbers. Claimant's conduct in locking up his dog and coming back to speak with the men was not unreasonable given the situation and the hour. Claimant was arrested, however, as he tried to return. Claimant was not given the opportunity to verify the identity of the officers or straighten out any misunderstandings. The record further reveals, in struggling with the officers, claimant cried out for help from his co-workers while yelling the men really were not police officers. Claimant certainly was not the aggressor in this situation, and more importantly, the dispute was not purely personal. Under such circumstances, claimant is entitled to compensation. (See *Rodriguez v. Industrial Comm'n* (1983), 95 Ill. 2d 166, 170-71, 447 N.E.2d 186, 188-89.) Violation of the law in performing one's duties does not automatically remove an employee from the course of his employment. (See 1A A. Larson, Workmen's Compensation § 35

(1995).) We conclude claimant did not step outside the scope of his employment in this instance. While we are reluctant to set aside a decision of the Commission on a factual question, we must do so when the weight of the evidence compels an opposite conclusion. (*Montgomery Elevator Co. v. Industrial Comm'n* (1993), 244 Ill. App. 3d 563, 567, 613 N.E.2d 822, 825.) Such is the case here.

For the aforementioned reasons, we reverse the judgment of the circuit court of Cook County confirming the decision of the Industrial Commission and reinstate the decision of the arbitrator awarding claimant benefits.

Judgment reversed.

COLWELL and HOLDRIDGE, JJ., concur.

JUSTICE RAKOWSKI, dissenting:

The Commission concluded that claimant knew the men were police officers from the beginning. Claimant had been shown the officers' badges and had been repeatedly told to remove the dog or risk going to jail. Although claimant's testimony paints a different picture, it was for the Commission to judge credibility and draw inferences from the facts.

The question is one of fact and properly the province of the Commission. Because there is substantial evidence which supports the Commission's decision, it cannot be said that the claimant's opposite conclusion is clearly apparent.

Because I believe that the Commission's decision is not against the manifest weight of the evidence, I would affirm the judgment of the circuit court.

McCULLOUGH, P.J., joins in the dissent.