(No. 52942.—

EAGLE DISCOUNT SUPERMARKET, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (James Day, Appellee).

*Opinion filed September 29, 1980.—Rehearing denied November 26, 1980.*

332

Henry D. Noetzel & Associates, Ltd., of Peoria (John E. Mitchell, of counsel), for appellant.

Allen, Clark & Cullinan, Ltd., of Peoria (Gary L. Clark, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This workmen's compensation case concerns the compensability of injuries sustained in a recreational activity occurring on the employer's premises during the employee's lunch hour. The employer, Eagle Discount Supermarket (hereinafter Eagle), appeals directly to

this court under our Rule 302(a) (73 Ill. 2d R. 302(a)) from an order of the Peoria County circuit court. The only issue involved in this appeal is whether the claimant, James Day, Jr., sustained an accidental injury arising out of and in the course of his employment. The arbitrator found that he had. This finding was affirmed by the Industrial Commission, and the circuit court of Peoria County confirmed the decision of the Commission. No question is raised on appeal as to the nature and extent of the injury.

Claimant was employed as a shelf stocker at the Eagle store located on Glen Avenue in Peoria. He worked the third shift, which began at 10 p.m. and ended at 6:30 a.m. He was permitted a lunch break at some time between 1:30 and 2:30 a.m. Since the time taken for lunch was without pay, he was required to punch out for lunch on a time clock. The employees were not restricted to the employer's premises during their lunch break. However, since the store was closed during the third shift and only the night manager had keys, the employees had to request that the night manager unlock the door before they could leave the building. When the weather permitted, the night crew manager would unlock the door of the store to let the employees eat their lunch outside. On such occasions he would also turn on the parking lot lights so that the employees would have sufficient light in which to play catch with either a softball or a plastic disc commonly referred to as a frisbee.

On September 15, 1976, claimant reported to work. He punched out on the time clock for his lunch break and went outside for lunch; the night manager had unlocked the door and turned on the parking lot lights for the employees. After he ate, the claimant played frisbee. While engaged in this activity, he tripped and fell. Claimant was taken to St. Francis Hospital emergency room by a coemployee. It was there determined that claimant had

fractured his right ankle.

Claimant filed an application for adjustment of claim. He was the only witness to testify at the hearing before the arbitrator. In addition to the above recitation of facts, claimant stated that the night manager, William Collie, had not only unlocked the door and turned on the lights, but also had participated in the recreational activity on the morning that claimant was injured. Claimant further testified as to the surgical procedures he underwent, the period during which he was unable to work, the receipt of unemployment and group insurance benefits, his present job, and the pain he continued to experience due to the fracture. Medical reports of claimant's treating physician, Dr. Jerome P. Kraft, were admitted at the hearing before the arbitrator. These reports verified that claimant had indeed sustained a fracture of the distal right fibula. Based upon the above, the arbitrator concluded that claimant had sustained accidental injuries arising out of and in the course of employment. Accordingly, the arbitrator entered an award for medical expenses, temporary total disability, and for 75% permanent and complete loss of use of the right foot.

On review, Eagle first presented Michael Miller as a witness. Miller testified that he was employed as a backup night crew chief and that he worked the third shift. He stated that he was in charge of the night crew on September 15, 1976, and that Collie was not present. Miller stated that company policy did not dictate where or how the employees took their lunch breaks. He recalled that he unlocked and opened the door for the employees. He did not prohibit them from participating in a game of catch; nor did he attempt to restrict their activities in any way. He was aware that they had played frisbee in the parking lot during their lunch break on prior occasions and that they were so engaged at the time claimant sustained his injury.

Eagle also presented Kevin Collie as a witness at the hearing before the Commission. Collie testified that he was employed as a night crew chief for Eagle. He indicated, however, that he was not at work on the date that claimant was injured. No additional witnesses were presented, and disability and medical benefit checks were submitted into evidence. At the close of the proofs, the Industrial Commission affirmed the arbitrator's finding that claimant sustained a work-related, compensable injury, but modified the amount recovered for permanent disability to 25%. The Peoria County circuit court confirmed the Commission's decision but reduced the amount of the temporary total disability to be recovered.

On appeal to this court, Eagle urges that that part of the Peoria County circuit court judgment which upheld the Commission's finding that claimant sustained his injury in an accident arising out of and in the course of his employment be reversed. Eagle initially states in its brief that there exists no dispute of the pertinent facts. Thus, according to Eagle, this court is in no way bound by the decision of the Industrial Commission since the case presents a question of law rather than of fact. Eagle next presents four distinct theories in support of its argument that the injury was not sustained in an accident arising out of and in the course of employment: (1) The claimant's "parking lot" injury is noncompensable since there was no showing that there existed a hazard other than that to which the general public would be exposed; (2) the injury is a noncompensable "recreational" injury since there was no evidence of employer organization, sponsorship, coercion to participate and benefits derived; (3) the injury, which was sustained during an unpaid and unrestricted lunch break, was not sustained in an activity sufficiently related to the employment; (4) the "personal comfort" doctrine precludes recovery since there was no showing that the employment created an increased risk of injury.

Claimant initially contests Eagle's characterization of the issue presented as being one of law. According to the claimant, the finding that this was a compensable accident was a question of fact and the decision of the Commission was not contrary to the manifest weight of the evidence. Claimant next asserts that this case can only be characterized as falling within the "personal comfort" line of cases. As such, according to the claimant, the injury was compensable since the conditions of employment necessitated the recreational activity in order to refresh the employees.

We first address Eagle's argument that the issue presented is one of law to be determined by this court. The only disputed fact concerns the identification of the night manager employed during the shift wherein claimant was injured. The material facts are undisputed. Where undisputed facts upon an issue permit more than a single inference to be drawn therefrom, the determination of such issue presents a question of fact and the conclusion of the Commission will not be disturbed on review unless it is contrary to the manifest weight of the evidence. (*Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361, 366; *Union Starch v. Industrial Com.* (1974), 56 Ill. 2d 272, 275.) Since more than one inference can be drawn from the undisputed facts concerning the issue on appeal, we reject Eagle's contention that this case presents an issue of law to be determined by the reviewing court and we will decline to reverse the decision below unless we find it to be contrary to the manifest weight of the evidence.

This court has repeatedly defined the dual requirements for compensability under the Act: the injury must both "arise out of" and be sustained while "in the course of" employment. (See, *e.g., Bloom v. Industrial Com.* (1975), 61 Ill. 2d 248, 250; *Technical Tape Corp. v. Industrial Com.* (1974), 58 Ill. 2d 226, 230; *Union Starch*

*v. Industrial Com.* (1974), 56 Ill. 2d 272, 275.) (See generally I. Greenfield, *Injuries Arising Out of and in the Course of the Employment,* 1957 U. Ill. L.F. 191.) The phrase "arising out of the employment" refers to the requisite causal connection between the employment and the injury; that is, the injury must have had its origins in some risk incidental to the employment. (*Technical Tape Corp. v. Industrial Com.* (1974), 58 Ill. 2d 226, 230.) The phrase "in the course of employment" refers to the time, place and circumstances of the injury. (*Fire King Oil Co. v. Industrial Com.* (1976), 62 Ill. 2d 293, 294.) If the injury occurs within the time period of employment, at a place where the employee can reasonably be expected to be in the performance of his duties and while he is performing those duties or doing something incidental thereto, the injury is deemed to have occurred in the course of employment. *Segler v. Industrial Com.* (1980), 81 Ill. 2d 125, 128.

We note that claimant sustained his injury while engaged in a recreational activity occurring on the premises during an authorized lunch break. Eagle suggests in its brief that this court employ the analysis applicable to the line of cases falling within the recreational activities cases. (See, *e.g., Minnesota Mining & Manufacturing Co. v. Industrial Com.* (1979), 78 Ill. 2d 182.) If we were to categorize this case as such, however, we would be compelled to find sufficient employer sponsorship to render the activity incidental to the employment; that is, the recreational activity was an accepted, regular and normal one which occurred on the premises during an authorized lunch break. (See 1A A. Larson, Workmen's Compensation secs. 22.00 to 22.12, at 5–71 through 5–78 (1979).) However, this court stated as recently as last term that the mere fact that a recreational activity is involved does not necessarily trigger the analysis employed in the recreational activities cases. (*Board of Education v. Industrial*

*Com.* (1980), 81 Ill. 2d 17, 20.) We believe, instead, that these facts present a combination of problems which are found not only in the "recreational activities" cases but also in the "lunch hour" and the "personal comfort" cases.

In the lunch hour cases, the most critical factor in determining whether the accident arose out of and in the course of employment is the location of the occurrence. Thus, where the employee sustains an injury during the lunch break and is still on the employer's premises, the act of procuring lunch has been held to be reasonably incidental to the employment. (*Mt. Olive & Staunton Coal Co. v. Industrial Com.* (1934), 355 Ill. 222; *Humphrey v. Industrial Com.* (1918), 285 Ill. 372.) (See I. Greenfield, *Injuries Arising Out of and in the Course of the Employment,* 1957 U. Ill. L.F. 191, 206-08.) This rule remains true even where the injury was not actually caused by a hazard of the employment. (See F. Wiedner, *The Workmen's Compensation Act,* 1967 U. Ill. L.F. 21, 36-37.) The rule is also unchanged by the fact that the employee receives no pay for the lunch break and is not under the employer's control, being free to leave the premises. (1A A. Larson, Workmen's Compensation sec. 21.21(a), at 5—5 (1979); F. Wiedner, *The Workmen's Compensation Act,* 1967 U. Ill. L.F. 21, 36-37.) See generally Comment, *Workmen's Compensation: The Personal Comfort Doctrine,* 1960 Wis. L. Rev. 91, 91-98; Note, *Workmen's Compensation: Personal Comfort in Practical Perspective,* 1917 Law and Soc. Ord. 823, 829-30.

Since eating is deemed to be an act of personal comfort, the personal comfort doctrine has been applied to cases involving lunchtime injuries. Under the personal comfort doctrine, the course of employment is not considered broken by certain acts relating to the personal comfort of the employee. (See generally, 1A A. Larson, Workmen's Compensation secs. 21.00 to 21.84, at 5—4

through 5—70 (1979).) Other acts during a break time in the employment besides the act of eating have also been held to be acts of personal comfort. (See, *e.g., Sparks Milling Co. v. Industrial Com.* (1920), 293 Ill. 350 (getting fresh air); *Union Starch v. Industrial Com.* (1974), 56 Ill. 2d 272 (seeking relief from heat); *Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361 (seeking relief from heat and humidity); *Chicago Extruded Metals v. Industrial Com.* (1979), 77 Ill. 2d 81 (showering in locker room provided by employer).) However, if the employee voluntarily and in an unexpected manner exposes himself to a risk outside any reasonable exercise of his duties, the resultant injury will not be deemed to have occurred within the course of the employment. *(Segler v. Industrial Com.* (1979), 81 Ill. 2d 125, 128.) The employer may, nevertheless, still be held liable for injuries resulting from an unreasonable and unnecessary risk if the employer has knowledge of or has acquiesced in the practice or custom. *Union Starch v. Industrial Com.* (1974), 56 Ill. 2d 272, 277.

Applying these principles to the case at bar, we cannot say that the Industrial Commission's finding that the claimant sustained an accidental injury arising out of and in the course of employment was contrary to the manifest weight of the evidence. Claimant was injured while participating in a recreational activity on the premises during an authorized lunch break. The Commission could reasonably infer that the activity falls within the personal comfort doctrine. That claimant voluntarily remained on the premises and was not paid for the lunch break will not serve to defeat an award under the Act. Finally, we do not believe that claimant exposed himself to an unnecessary and unreasonable risk. Even if the converse were true, the Commission could still find the injury to have occurred within the course of employment, since Eagle knew, acquiesced and possibly participated in the employees'

routine games. Accordingly, the judgment of the Peoria County circuit court is affirmed.

*Judgment affirmed.*