JOSEPH S. JENSEN, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Baldwin Aircraft Corporation *et al.*, Appellees).

First District (Industrial Commission Division)   No. 1—97—2967WC

Opinion filed April 13, 1999.—Rehearing denied June 18, 1999.

Barbara A. Sherman, of Chicago, for appellant.

Ganan & Shapiro, of Chicago, for appellees.

JUSTICE COLWELL delivered the opinion of the court:

Claimant, Joseph S. Jensen, appeals from an order of the circuit court of Cook County confirming a decision of the Industrial Commission (Commission) finding that claimant's August 10, 1991, injury did not arise out of and in the course of his employment with respondent, Baldwin Aircraft Corporation. Claimant appealed, and we affirm.

On appeal, claimant contends that the Commission's conclusion that his injuries did not arise out of and in the course of his employment and that its calculation of his average weekly wage are against the manifest weight of the evidence. Based on our ruling, we need only address the issue of whether claimant's injuries arose out of and in the course of his employment.

## FACTS

In August 1991, respondent was in the business of maintaining

and operating a private jet-aircraft and providing air transportation for its owner, Tom Baldwin, and his guests to Baldwin's private 5,000-acre summer retreat, "Granot Loma," near Marquette, Michigan, and, on occasion, to other destinations. Robert Purcell was respondent's chief pilot, and claimant was one of respondent's copilots.

Between December 1990 and August 1991, claimant copiloted anywhere between 9 to 13 of respondent's 25 flights. Claimant testified that he had stayed over on most trips to Granot Loma. Purcell determined on a cost-effective basis whether claimant would stay over at Granot Loma before the return flight or whether he would fly a commercial airliner back and then return when he was scheduled to copilot the return flight. Claimant testified he was occasionally required to do paperwork during his stays at Granot Loma but his job was mostly to "get along" with Baldwin and his family and guests and to help clean up after meals.

During claimant's stays at Granot Loma, Baldwin allowed claimant to use his recreational vehicles, including two all-terrain vehicles (ATV), on the property at Granot Loma. Prior to working for respondent, claimant had never ridden an ATV. Purcell showed claimant how to operate an ATV, and they rode together on several occasions.

On August 7, 1991, claimant and Purcell flew Baldwin's wife and children to Granot Loma with a return trip scheduled for August 11. Claimant stayed at Granot Loma on this occasion.

On August 9, claimant and Purcell made plans to take an ATV ride to an unfamiliar area of Baldwin's property located across a state highway. Neither claimant nor Purcell had been to this area before.

The next day, August 10, between 3 p.m. and 3:30 p.m., claimant and Purcell began preparations for their ride. While Purcell wore a helmet, claimant did not, even though helmets were available for claimant to use. Claimant testified that he never wore a helmet when riding the ATVs. Purcell testified that he always wore a helmet when he left the courtyard and went out on the trails. Purcell further testified that when he asked claimant if he were going to wear a helmet, claimant said no in a joking fashion. Claimant denied that Purcell asked him if he were going to wear a helmet.

Purcell testified that he was driving a black, 185 CC Kawasaki, and claimant was driving a newer blue and white, 225 CC Kawasaki. Claimant testified that he was driving a black ATV.

Claimant and Purcell left the Granot Loma courtyard and proceeded to ride about three-quarters of a mile down a driveway to a gate. At this point, they were still on Baldwin's property. Claimant and Purcell then rode out of the gate and onto a road. Claimant did not know if the road was a county or public road but described it as a

gravel, sand road. Purcell testified that the road was a public highway, either a county or a state road, but probably a county road. Both agreed that the road was dusty.

As they proceeded down the road, claimant drove in front of Purcell. Purcell testified that claimant was traveling too fast, and, even though his ATV did not have a speedometer, Purcell opined that claimant was traveling between 30 to 50 miles per hour. Purcell testified that he was not certain he could catch up to claimant even if he drove with the ATV "wide open." Purcell testified that they were riding at an uncomfortably fast speed, that there was a lot of dust, that his vision was restricted, and that it was reckless to ride so fast in the dust. As a result, as soon as they got outside the gate and Purcell noticed that the speed picked up, he pulled over to the side of the road for about three to five minutes to let the dust clear.

Purcell then proceeded to the predetermined rendezvous point at the state highway they needed to cross to reach their intended destination, but claimant was not there. The state highway was located about three to four miles from the gate that separated Baldwin's property from the county road. Purcell believed that claimant would not cross the state highway without him, so he waited for about 30 minutes before he backtracked the county road and found claimant at about 4:20 p.m. Purcell testified that claimant had hit a tree.

Claimant testified that the last thing he remembered before waking up in the hospital was that he began to slow down on the road to make a left turn. Claimant suffered a basilar skull fracture, a left temporal skull fracture, a basal fracture, and a fracture of the first and second ribs on the left side with an apical hematoma.

On August 13, 1992, the arbitrator found that claimant was an independent contractor and denied benefits. The Commission affirmed, and the circuit court confirmed the Commission's decision. This court found an employer-employee relationship existed and reversed and remanded the matter to the Commission. On remand, the Commission found that claimant failed to prove that he suffered injuries that arose out of and in the course of his employment and again denied benefits. The circuit court confirmed the Commission's decision, and claimant appealed.

## STANDARD OF REVIEW

It is the claimant's burden to prove by a preponderance of the credible evidence that the injury complained of arose out of and in the course of employment. *Johnson Outboards v. Industrial Comm'n,* 77 Ill. 2d 67, 70-71 (1979). The issue of whether or not an injury arose out of and in the course of employment is for the Commission to

decide, and its decision will not be reversed unless it is contrary to the manifest weight of the evidence. *Humphrey v. Industrial Comm'n*, 76 Ill. 2d 333, 336 (1979). In order for a finding to be against the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Price v. Industrial Comm'n*, 278 Ill. App. 3d 848, 852 (1996).

## ANALYSIS

■ A claimant's injury is not compensable unless it both "arises out of" and is "in the course of" the claimant's employment. *Paganelis v. Industrial Comm'n*, 132 Ill. 2d 468, 480 (1989). The phrase "in the course of" refers to the time, place, and circumstances under which the accident occurred. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44 (1987). An injury "arises out of" a claimant's employment when there is a causal connection between the employment and the injury; that is, the origin or cause of the injury must be some risk connected with, or incidental to, the claimant's employment. *Brady v. Louis Ruffolo & Sons Construction Co.*, 143 Ill. 2d 542, 548 (1991). Typically, an injury "arises out of" a claimant's employment if, at the time of the occurrence, the claimant was performing acts the employer instructed the claimant to perform, acts incidental to the claimant's assigned duties, or acts which the claimant had a common law or statutory duty to perform. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 58 (1989).

■ In the present case, it is undisputed that claimant's employment required him to travel. A "traveling employee" is defined as an employee who is "required to travel away from the employer's premises in order to perform his job." See *Chicago Bridge & Iron, Inc. v. Industrial Comm'n*, 248 Ill. App. 3d 687, 694 (1993). Thus, claimant was a traveling employee.

Courts generally consider traveling employees differently from other employees when considering whether an injury arose out of and in the course of employment. *Hoffman v. Industrial Comm'n*, 109 Ill. 2d 194, 199 (1985). However, a finding that a particular claimant is a traveling employee does not exempt that claimant from proving that an injury arose out of and in the course of employment. *Hoffman*, 109 Ill. 2d at 199. Whether an injury to a traveling employee arises out of and in the course of employment depends upon the reasonableness of the specific conduct and whether it might normally be anticipated or foreseen by the employer. *U.S. Industries v. Industrial Comm'n*, 40 Ill. 2d 469, 474-75 (1968).

■ Here, the Commission found that claimant's participation in recreational activities and his use of recreational vehicles during the stayover were reasonable and foreseeable. Neither party challenges

this ruling on appeal, and we note that a traveling employee may be compensated for injuries sustained while engaged in recreational activities as long as those activities were reasonable and foreseeable. *Bailey v. Industrial Comm'n*, 247 Ill. App. 3d 204, 208-09 (1993). Therefore, we agree with the Commission and find that claimant's use of the ATV was reasonable and foreseeable.

■ The Commission further found, however, that the manner in which claimant used the ATV was reckless and thus unreasonable. While we have been unable to locate any Illinois cases that directly address whether the Commission may find that the manner in which an activity is conducted is unreasonable or unforeseeable even though the activity itself is reasonable and foreseeable, we believe that such an analysis is appropriate.

For instance, while the recreational activities of a traveling employee may be compensable (see, *e.g., Bagcraft Corp. v. Industrial Comm'n*, 302 Ill. App. 3d 334, 338 (1998)), our supreme court in *U.S. Industries*, 40 Ill. 2d at 475, found that a claimant's pleasure drive in unfamiliar, mountainous terrain was an unforeseeable and unreasonable activity. In other words, the manner in which the claimant in *U.S. Industries* sought recreation was unreasonable and unforeseeable. Additionally, Professor Larson, while comparing the *U.S. Industries* case with *Schneider v. United Whelan Drug Stores*, 284 A.D. 1072, 135 N.Y.S.2d 875 (1964), a case where the court found compensable the death of a traveling employee who drowned on a pleasure boat ride, stated that Illinois courts "would perhaps say that there is a difference in reasonableness between killing time by taking a boat ride and by 'undertaking a midnight pleasure drive in unfamiliar mountain terrain.' " 2 A. Larson & A. Larson, Larson's Workers' Compensation Law § 25.23(c), at 5—321, 5—323—24 n.41.1 (1997). In other words, Professor Larson recognized that Illinois courts would look to the manner in which a claimant engaged in a recreational activity. Similarly, in *Hebrank v. Parsons, Brinckerhoff, Hall & MacDonald*, 88 N.J. Super. 406, 212 A.2d 579 (1965), the court stated that even if it assumed that the claimant was justified in seeking relaxation, the manner in which he sought relaxation (driving to a roadhouse and drinking alcohol) was not reasonable. Finally, this court recently stated that the determination of whether a traveling employee's injury arose out of and in the course of the employee's employment "depends on the reasonableness of the *employee's conduct* at the time of the injury and whether the employer could anticipate or foresee the *employee's conduct or activity*," and that injuries incurred by traveling employees during recreation are compensable "as long as the *recreational activity and the employee's conduct* were reasonable and foreseeable."

(Emphasis added.) *Bagcraft Corp.*, 302 Ill. App. 3d at 338. The issue then is whether the manner in which claimant used the ATV was reasonable and foreseeable.

■ In this case, the record shows that claimant planned to ride the ATV in an area to which he had never been before. In addition, at the time of the accident, claimant was driving on a county road and not on Baldwin's property. Furthermore, the Commission could have reasonably inferred that claimant was unfamiliar with the county road since he was traveling to a place to which he had never been before.

In addition, claimant did not wear a helmet even though helmets were available for his use. Purcell testified that he always wore a helmet when he left the courtyard, but claimant declined to wear a helmet.

Furthermore, Purcell opined that claimant drove too fast for the conditions. Both Purcell and claimant agreed that the county road was a dusty, sand and gravel road. In addition, despite claimant's testimony that he was riding the black ATV, the Commission could have found, based on Purcell's testimony, that claimant was riding the newer, more powerful 225 CC ATV. Also, regardless of the lack of direct evidence of speed, such as a speedometer, Purcell estimated that claimant was driving between 30 and 50 miles per hour and that he probably could not have caught up to claimant even if he had driven his ATV "wide open." (see *Watkins v. Schmitt*, 172 Ill. 2d 193, 206-07 (1996) (a witness familiar with the speed of a vehicle may express an opinion regarding the speed observed, and the witness may estimate miles per hour or state that the speed was fast or slow)). Purcell testified that claimant's speed was uncomfortably fast and that it was reckless to ride so fast in the dust.

Based on the combination of each of these factors, we cannot say that a conclusion opposite the Commission's conclusion is clearly apparent. Thus, the Commission's decision was not against the manifest weight of the evidence.

Finally, we reject claimant's reliance on *Eagle Discount Supermarket v. Industrial Comm'n*, 82 Ill. 2d 331 (1980), *Jewel Cos. v. Industrial Comm'n*, 57 Ill. 2d 38 (1974), *Stembridge Builders, Inc. v. Industrial Comm'n*, 263 Ill. App. 3d 878 (1994), and *Panagos v. Industrial Comm'n*, 171 Ill. App. 3d 12 (1988). None of these cases involved a traveling employee. Consequently, the reasonable and foreseeable analysis in this case was not addressed in those cases. In addition, only *Eagle* involved a recreational activity. Furthermore, unlike this case, in each of those cases the Commission had made an award to the claimant.

Finally, *Eagle*, *Jewel*, and *Stembridge* actually weaken claimant's

position. In *Eagle*, unlike this case, there was absolutely no evidence that the manner in which the claimant engaged in his recreational activity (playing frisbee) was unreasonable. In *Jewel*, the court found that the facts, including an eyewitnesses' estimation regarding rate of speed, supported an inference that the claimant's speed was not excessive. Thus, the claimant's manner of driving his motorcycle could not have been unreasonable. Finally, in *Stembridge*, the court stated that excessive speed alone does not disqualify a claimant from coverage under the Act. In this case, however, there are factors other than just the claimant's speed. Consequently, none of these cases alter this court's decision.

Based upon the foregoing, the Commission's decision was not against the manifest weight of the evidence and, thus, is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, J., concur.

JUSTICE HOLDRIDGE, dissenting:

I would find that the claimant's injuries arose out of and in the course of his employment. I therefore respectfully dissent. Injuries incurred by traveling employees during recreation are compensable as long as the recreational activity and the employee's conduct were both reasonable and foreseeable. *Bagcraft Corp. v. Industrial Comm'n*, 302 Ill. App. 2d at 338.

Here, the majority found that the manner in which the claimant used the ATV was neither reasonable nor foreseeable. After reviewing the record, I would conclude that the opposite conclusion is clearly apparent. As to the foreseeability that the claimant would ride an ATV in the mannner in which he did, the record established that: (1) the claimant learned to ride an ATV only on a prior trip to the employer's estate; (2) the claimant had ridden an ATV on the employer's estate on several occasions prior to the date of the accident; (3) the claimant had never worn a helmet on those previous occasions; (4) on the occasion of the claimant's accident, as on previous occasions, the employer had provided an ATV for the claimant's use; and (5) the claimant intended to use the ATV on the employer's 5,000-acre estate at the time of the accident, although the accident apparently occurred on a public road adjacent to the employer's property. Clearly, the employer knew or should have known that the claimant would engage in ATV riding while at Granot Loma.

I also disagree with the majority's conclusion that the speed of the claimant's ATV combined with his lack of a helmet and unfamiliarity

with the landscape rendered his conduct unreasonable. Given that the employer provided the claimant with the use of an ATV on land known to be unfamiliar to the claimant, and given that employer did not require the claimant to use a helmet, it is clearly reasonable to expect that the claimant would use the ATV without a helmet and in unfamiliar territory. Additionally, unlike the claimant in *Hebrank v. Parsons, Brinckerhoff, Hall & McDonald*, 88 N.J. Super. 406, 212 A.2d 579 (1965), who may have sought relaxation by driving and drinking alcohol, there exists no statute or other safety regulation requiring that a helmet be worn while operating an ATV.

Thus, contrary to the majority, I would find that neither the claimant's lack of a helmet nor his unfamiliarity with the landscape is evidence that the claimant's use of the ATV was unreasonable. As to the Commission's finding that the claimant's speed was excessive, the majority correctly notes that excessive speed *alone* does not disqualify a claimant from coverage under the Act. See *Stembridge Builders, Inc. v. Industrial Comm'n*, 263 Ill. App. 3d 878 (1994).

It has long been recognized that one of the objectives of the Act was to do away with the defenses of contributory negligence or assumed risk. *Stembridge Builders*, 263 Ill. App. 3d at 880. I am concerned that the majority's holding in this matter, focusing on the reasonableness of the manner in which the claimant operated the ATV, needlessly introduces the concept of contributory negligence into the determination of compensability for traveling employees.

As I believe that, under the circumstances herein, it is clearly apparent that the manner in which the claimant used the employer's ATV was both foreseeable and reasonable, I would reverse the decision of the Commission and the circuit court. I dissent on that basis.

RARICK, J., joins in this dissent.