2016 IL App (1st) 151693WC

NO. 1-15-1693WC

Opinion filed: February 11, 2016

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION
_____

| | | |
|---|---|---|
| UNITED AIRLINES, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13-MR-53 |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION | ) | Honorable |
| COMMISSION *et al.* (Kristine Isern, | ) | Roberto Lopez Cepero, |
| Appellee). | ) | Judge, presiding. |

_____

JUSTICE STEWART delivered the judgment of the court, with opinion.
Presiding Justice Holdridge and Justices Hoffman, Hudson, and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    The claimant, Kristine Isern, a flight attendant for the employer, United Airlines, Inc. (United), injured her knee on a flight from Denver, Colorado, to New York's La Guardia airport. She did not work as a flight attendant on the flight from Denver to New York, but flew as a passenger. At the time of her injury, she resided in Boulder, Colorado, and worked on United's flights originating out of John F. Kennedy

International Airport (JFK airport) in New York City. She was flying to New York the day before she was scheduled to work on a United flight originating from JFK airport.

¶ 2    The claimant filed a claim under the Illinois Workers' Compensation Act (the Act) (820 ILCS 305/1 *et seq.* (West 2012)) and maintained that, at the time she injured her knee, she qualified as a "traveling employee" under the Act. The arbitrator agreed and awarded her benefits under the Act. On review, the Illinois Workers' Compensation Commission (the Commission) reversed the arbitrator, finding that the claimant did not qualify as a traveling employee but was merely on her regular commute to work when she sustained her knee injury. The circuit court reversed the Commission's decision and reinstated the arbitrator's decision. United now appeals the circuit court's judgment.

¶ 3                      BACKGROUND

¶ 4    At the time of her injury, the claimant lived in Boulder, Colorado, but her job duties were exclusively on United's flights originating out of JFK airport in New York City. When she traveled from her residence to report for work at her base airport, she usually traveled from her home in Boulder, Colorado, to the airport in Denver and then on one of United's flights from Denver to New York. United did not pay the claimant for her time to travel from Colorado to New York and did not reimburse her for any travel expenses, meals, or hotel costs for traveling to or staying in New York. It paid her only for the time she performed flight attendant duties on aircraft departing JFK airport. The claimant began earning wages when the aircraft departed the gate at JFK airport and until the flight arrived at its destination.

¶ 5    United did not require its New York City based employees to reside in the New York City area, and the claimant testified that United had no control over where she lived.  The record includes testimony that 80% of United's New York based flight attendants commuted to New York from areas outside the New York City area.  In 2006, United offered the claimant a transfer to the Denver airport as her base airport so she could work from an airport closer to her chosen residence (Boulder, Colorado), but she declined the transfer and chose to keep JFK airport as her base airport.  She testified that this was her personal preference and that it was her personal choice to commute to New York from Colorado.  United did not derive any benefit from her choice to reside in Colorado.

¶ 6    United provided its flight attendants with free parking at their base airports.  They could elect to have free parking privileges at a different airport instead, pending availability, but it provided parking at only one airport.  The claimant elected to have parking privileges in a United employee parking lot at the airport in Denver.  Therefore, she did not have parking privileges at JKF airport.  She could use her employee-parking pass at the Denver airport while working, vacationing, or picking up a friend at the airport.

¶ 7    The claimant's accident occurred on September 13, 2011, on a flight from Denver to La Guardia airport in New York.  She was scheduled to work the following day, September 14, 2011, on a United flight out of JFK airport.  She did not perform any job duties on the flight from Denver to La Guardia.  Even though she was not working on September 13, 2011, she wore her flight attendant uniform to the Denver airport and

while boarding her flight in order to get through airport security and avoid checking any bags. Another United employee testified that this was a violation of United's policies.

¶ 8    The claimant used a leisure travel pass to fly from Denver to New York on September 13, 2011. United provided its employees with unlimited amounts of leisure travel passes that allowed the employees fee-waived travel on any of United's flights. The claimant booked flights for her commute to New York using a leisure travel pass in the same way she booked fee-waived flights for vacations or other leisure travel.

¶ 9    Use of a leisure travel pass required the claimant to fly on standby. Revenue-generating passengers were assigned seats before any fee-waived passengers, including flight attendants commuting to their base airports. In addition, flight attendants commuting to their base airports on leisure passes did not have any preference or priority over other standby passengers. Accordingly, United had not guaranteed the claimant a seat on the flight from Denver to La Guardia. The claimant testified that she could have commuted to New York by flying on a different airline or by other means of travel. She made the decision to fly on a United flight, and United had no control or preference concerning how she traveled to and from her base airport to report for work.

¶ 10    The accident occurred shortly after the claimant boarded her flight. After locating her assigned seat, she went to the lavatory on the plane to change out of her flight attendant's uniform and into her regular clothes. She returned to her seat and caught her foot where the seat row was bolted to the floor. She heard a pop in her left knee and felt her knee collapse. She testified that there was no defect in the seat. When she stood up

4

to exit her seat at the end of the flight, her knee collapsed. She was provided a wheelchair to exit the plane.

¶ 11    The claimant had a room at the Pan America Hotel in New York City to stay the night before reporting for work at JFK airport the next day. United was not involved in arranging for the hotel stay and did not reimburse the claimant for her hotel, meals, or any other expenses for staying in New York. The hotel's van took her to a hospital where she received emergency care and was diagnosed with a sprain of the lateral collateral ligament of the knee. She subsequently underwent a magnetic resonance imaging test on September 22, 2011, which showed a tear of the anterior cruciate ligament. On October 18, 2011, she underwent knee surgery that consisted of an anterior cruciate ligament reconstruction with debridement of the lateral meniscus and lateral condyle. The claimant's physician, Dr. McCarty, released her to work full duty as a flight attendant on April 9, 2012. Since then, the claimant has worked full duty and has not sought any further medical treatment stemming from the accident.

¶ 12    Sometime after the accident, the claimant transferred her base airport to the San Francisco, California, airport because her husband was working in Napa, California. At the time of the hearing, the claimant spent most of her time in Napa although her permanent residence remained in Colorado. The claimant had transferred her parking privileges to the San Francisco airport and drove from Napa to the San Francisco airport for work. She no longer had parking privileges at the Denver airport. If the claimant stayed at her residence in Colorado, she had to pay to park at the Denver airport in order to fly to her base airport in San Francisco.

5

¶ 13    At the arbitration hearing, the parties disputed the issue of whether the claimant's injury arose out of and in the course of her employment.   In resolving this dispute, the arbitrator found that the claimant qualified as a traveling employee for purposes of awarding compensation under the Act.  The arbitrator stated that there was a lack of case law on the issue, but was obligated to follow prior Commission decisions finding that a flight attendant traveling to her work domicile qualified as a traveling employee. Therefore, the arbitrator found that she sustained a compensable accident that arose out of and in the course of her employment and awarded temporary total disability benefits, medical expenses, and permanent partial disability benefits in the amount of 25% of loss of use of the left leg.

¶ 14    United sought a review of the arbitrator's decision before the Commission.  The Commission reversed the arbitrator's finding that the claimant was a traveling employee at the time of her injury.   The Commission noted that after the arbitrator filed his decision, the supreme court filed an opinion in *Venture-Newberg-Perini, Stone & Webster v. Illinois Workers' Compensation Comm'n*, 2013 IL 115728, 1 N.E.3d 535, in which the court discussed the criteria for establishing traveling employee status within the meaning of the Act.  The Commission determined that the supreme court's analysis in *Venture-Newberg* applied to the facts of the present case and that the analysis established that the claimant did not qualify as a traveling employee at the time of her accident.

¶ 15    The Commission emphasized that the claimant chose to live in Colorado, that United did not tell the claimant where to live, that United did not derive any benefit from her choice to live in Colorado, that United did not compensate the claimant for her time

or travel expenses incurred during her voluntary commute, that the claimant selected her own flight and did not receive any preferential treatment from United as a commuting employee, and that there was no evidence that the claimant's travel "was determined by the demands or exigencies of her job." The Commission concluded that "[h]er travel on that date arose out of the personal choices she made to maintain her residence in Colorado" and maintain her base airport in New York. Therefore, the claimant's travel was "due to her personal choice only."

¶ 16    The claimant appealed the Commission's decision to the circuit court. The circuit court reversed the Commission's decision and reinstated the arbitrator's decision. The circuit court believed that the undisputed facts were distinguishable from the facts in *Venture-Newberg*. Specifically, the circuit court noted that the claimant in the present case, unlike the employee in *Venture-Newberg*, was not a temporary employee. At the time of the arbitration hearing, the claimant had worked for United for approximately 16 years. In addition, the circuit court believed that the claimant's transportation on September 13, 2011, was "necessary to the exigencies of her work." For this conclusion, the circuit court emphasized that United paid for her parking at the airport in Denver and provided her with free air travel to her base airport. The court concluded that United preferred that the claimant "take certain mode of transportation" in commuting to work. The circuit court concluded that when the claimant boarded the flight from Denver to New York, she "essentially began her work." The circuit court believed that the claimant's regular commute to work ended when she "set foot in the airport after getting

7

out of her car" and that, at that time, she "effectively was in the course of her employment when she was injured." United appeals the circuit court's judgment.

¶ 17                                    ANALYSIS

¶ 18    The issue that we must decide is whether the claimant was a traveling employee when she injured her knee on the United flight from Denver to New York.

¶ 19    In order for an injured worker to recover compensation benefits under the Act, the worker has to show that her injuries arose out of and in the course of her employment. *Jensen v. Industrial Comm'n*, 305 Ill. App. 3d 274, 277, 711 N.E.2d 1129, 1132 (1999). The issue of whether an injury arose out of and in the course of employment is usually a question of fact that will not be reversed unless it is contrary to the manifest weight of the evidence. *Id*. at 277-78, 711 N.E.2d at 1132. "In order for a finding to be against the manifest weight of the evidence, an opposite conclusion must be clearly apparent." *Id*. at 278, 711 N.E.2d at 1132. The claimant, however, argues that the proper standard of review in the present case is *de novo*. When the facts are undisputed and susceptible to but a single inference, our review is *de novo*. *Kertis v. Illinois Workers' Compensation Comm'n*, 2013 IL App (2d) 120252WC, ¶ 13, 991 N.E.2d 868. In the present case, however, the circuit court improperly reversed the Commission's decision under either standard of review. Therefore, we need not decide which standard of review applies. See *Venture-Newberg*, 2013 IL 115728, ¶ 14 ("Because [the employee's] argument fails under either standard ***, we need not resolve the parties' dispute regarding the standard of review.").

¶ 20    Generally, an employee injured while going to or returning from her place of employment has not sustained an injury that arose out of or in the course of the employment. *Commonwealth Edison Co. v. Industrial Comm'n*, 86 Ill. 2d 534, 537, 428 N.E.2d 165, 166 (1981). In explaining the purpose of this rule, the supreme court stated that "the employee's trip to and from work is the product of his own decision as to where he wants to live, a matter in which his employer ordinarily has no interest." *Sjostrom v. Sproule*, 33 Ill. 2d 40, 43, 210 N.E.2d 209, 211 (1965). An exception to this rule applies when an employee qualifies as a "traveling employee." "A 'traveling employee' is one whose work duties require him to travel away from his employer's premises." *Pryor v. Illinois Workers' Compensation Comm'n*, 2015 IL App (2d) 130874WC, ¶ 20, 27 N.E.3d 678. A traveling employee is considered to be "in the course of" her employment from the time she leaves her home until she returns. *Id*. An injury sustained by a traveling employee "arises out of" her employment if she is injured while engaging in conduct that was reasonable and foreseeable. *Id*.

¶ 21    In order to qualify as a traveling employee, the work-related travel "must be more than a regular commute from the employee's home to the employer's premises." *Id.* ¶ 22. Our supreme court recently discussed this requirement and the criteria for an employee to qualify as a traveling employee in *Venture-Newberg*. We agree with the Commission that the *Venture-Newberg* court's analysis controls our analysis in the present case.

¶ 22    In *Venture-Newberg*, the employee was a union pipefitter who took a temporary job assignment at a job site that was located 200 miles away from his home because there was no work available locally. *Venture-Newberg*, 2013 IL 115728, ¶ 4. He was not

required to take the job and could not have taken the job if his local union had a job available. *Id.* ¶ 22. The employer expected the employee to work at the job site 7 days a week, 12 hours per day; therefore, he and another union member decided to stay at a local motel. *Id.* ¶ 4. The motel was located 30 miles from the job site. *Id.* ¶ 5. The employer did not make the motel arrangements or tell the workers where to stay. *Id.* ¶ 22. On the second day of the job assignment, the employee was injured in a vehicle accident during the drive from the motel to the jobsite. Id. ¶ 5. He sought compensation benefits under the Act. *Id.*

¶ 23 The employee testified that the employer wanted workers to be within an hour's drive of the jobsite, so that they were available for work when needed. *Id.* at ¶ 7. Other testimony established that while the employer desired the workers to be close to the job site, it did not direct workers where to stay and did not require workers to relocate to be closer to the job site. *Id.* In addition, the employer did not reimburse the workers for travel expenses or compensate them for travel time. *Id.* On appeal, the supreme court addressed the issue of whether the employee qualified as a "traveling employee" when he sustained his injuries in the vehicle accident. *Id.* ¶ 12.

¶ 24 In its analysis, the court noted that the claimant was not a permanent employee of the employer. *Id.* ¶ 24. The court further noted:

"[N]othing in [the employee's] contract required him to travel out of his union's territory to take the position with [the employer]. *** [H]e made the personal decision that the benefits of the pay outweighed the personal cost of traveling. [The employee] was hired to work at a specific location and was not directed by

[the employer] to travel away from this work site to another location. Rather, [the employee] merely traveled from the premises to his residing location, as did all other employees. Finally, [the employer] did not reimburse [the employee] for his travel expenses, nor did it assist [the employee] in making his travel arrangements. Due to these facts, the Commission's conclusion that [the employee] was a traveling employee was against the manifest weight of the evidence." *Id.*

¶ 25   Under a similar analysis, the undisputed facts of the present case establish that United had no control over where the claimant chose to live and derived no benefit from her choice to live in Colorado. The claimant's job duties were on flights departing JFK airport, and she earned wages only for her time working as a flight attendant on those flights. She did not perform any job duties during her travel from Colorado to New York. United did not pay her for her time traveling from Denver to New York and did not reimburse her for her overnight stay in New York prior to beginning her workday the following day. The claimant's decision to fly to La Guardia airport the day before her assigned work duties at JFK airport was not directed or arranged by United.

¶ 26   The claimant's choice of residence was a personal decision that the benefits of living in Colorado outweighed the personal cost of traveling from Colorado to New York. At the time the claimant injured her knee, she was engaged in her regular commute from her chosen residence to the city where her job assignment was located. These facts are substantially similar to the facts outlined by the supreme court in *Venture-Newberg* and establish that the claimant was not a "traveling employee" at the time she injured her

knee. She was simply injured while commuting from her residence to the city of her base airport the day before she was to report to her work site.

¶ 27    The circuit court found it significant that, unlike the injured worker in *Venture-Newberg*, the claimant in the present case was a permanent employee. At the time of the arbitration hearing, she had worked for United approximately 16 years. The circuit court also found it significant that United provided the claimant with parking privileges at the airport in Denver and that the claimant almost always used her leisure travel pass on United flights to reach her work. We do not believe that these facts qualified the claimant as a traveling employee.

¶ 28    Although the supreme court did note that the injured employee in *Venture-Newberg* was a temporary employee, the court's analysis focused on facts that showed that the employee was injured during his commute from his chosen residence. This same analysis applies in the present case, regardless of whether the claimant was a temporary or permanent employee. In its analysis, the *Venture-Newberg* court discussed a policy concern it had in allowing the employee to qualify as a traveling employee under the facts of that case. The court stated, "[W]hile an employee who chooses to relocate closer to a temporary job site can receive benefits if injured on the way to work, an employee who permanently resides close to the job site is not entitled to benefits if injured on the way to work." *Id.* ¶ 25. This policy statement emphasizes that the court focused on the nature of the claimant's travel, not on the permanency of his employment.

¶ 29    Also, this policy concern noted by the supreme court in *Venture-Newberg* is the same in the present case. A United flight attendant with JFK airport as his or her base

airport and who permanently resides in the New York City area would not be entitled to benefits as a traveling employee if he or she is injured during his or her regular commute to the airport. Likewise, a United flight attendant based out of the same airport should not qualify as a traveling employee if she is injured in her regular commute to JFK airport merely because she chose to live in Colorado instead of New York City and had a longer commute. Whether the claimant resides in New York City or in Colorado is a personal decision in which United has no interest.

¶ 30 The circuit court also focused on the claimant's parking privileges at Denver airport and that she commuted on a fee-waived United flight. These facts do not transform the claimant from a regular commuter into a traveling employee. The evidence at the hearing established that United provided its flight attendants with free parking at the airport from which the flight attendants were based. A flight attendant could choose to have a parking pass at another airport instead, but was allowed parking at only one location. The claimant's selection of the location of her parking privileges was her personal choice and stemmed from her choice of residence. It does not qualify her as a traveling employee.

¶ 31 The Commission's analysis correctly emphasized the facts showing that United did not compensate the claimant for her time or expenses for commuting to New York from Colorado. The claimant selected her own mode of transportation and lodging for the commute. United had no control over what modality of transportation the claimant chose to arrive at JFK airport or even when she arrived in the New York City area. The

13

claimant was injured in a flight to La Guardia airport on the day before she was scheduled to work on a United flight out of JFK airport.

¶ 32   The claimant did not have to pay for the flight from the Denver airport to La Guardia airport because she chose to fly standby while using a leisure travel pass. However, the pass was an employment benefit available to all United employees for personal travel regardless of how far the employees had to commute to work. The pass was not a benefit offered to the claimant because she resided in Colorado while working out of JFK airport. United did not provide her with preferential status on fee-waived flights as a commuting employee. The claimant's decision to use a leisure travel pass to commute from Colorado to New York did not transform her regular commute into a demand or exigency of her job. The method and time of travel was the result of her personal choices for her own benefit and from which United derived no benefit. Under these facts, the Commission ruled correctly in finding that the claimant did not qualify as a traveling employee at the time of her injury. See *Pryor*, 2015 IL App (2d) 130874WC, ¶ 29 ("[T]he claimant was injured during a regular commute from his home to his employer's premises, before he embarked upon a work trip away from his employer's premises. Thus, the Commission's finding that the claimant's injury did not arise out of or in the course of his employment was not against the manifest weight of the evidence.").

¶ 33                           CONCLUSION

¶ 34   For the foregoing reasons, we reverse the judgment of the circuit court and reinstate the Commission's decision.

14

¶ 35   Reversed; Commission decision reinstated.