2020 IL App (3d) 190491WC-U
No. 3-19-0491WC
Order filed August 13, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

| | | |
|---|---|---|
| ANA ELIZABETH SUITS, | ) | Appeal from the Circuit Court |
| | ) | of Peoria County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 18-MR-639 |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION | ) | |
| COMMISSION, *et al.*, | ) | Honorable |
| | ) | Mark Gilles, |
| (Marquette Group, Defendant-Appellee). | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Presiding Justice Holdridge and Justices Hoffman, Cavanagh, and Barberis concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Commission's decision that claimant's two falls, which occurred while walking during an authorized break off the employer's premises, did not arise out of or occur in the course of employment is not contrary to the manifest weight of the evidence.

¶ 2                                    I. INTRODUCTION

¶ 3     Claimant, Ana Elizabeth Suits, appeals an order of the Workers' Compensation Commission (Commission) denying her claim for benefits pursuant to the provisions of the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2012)).  The Commission found

that two accidents she sustained during her break time and off of the premises of respondent, Marquette Group, were not related to her employment. For the reasons that follow, we affirm.

¶ 4                                  II. BACKGROUND

¶ 5      Claimant was employed by respondent, a marketing company. Respondent rented office space on the seventh floor of a building that it did not own. Claimant's position was interactive product specialist, which involved doing searches for clients and digital marketing. She was employed full time. Claimant was allowed a 30-minute lunch break and two, 15-minute breaks that she could take at her discretion, one in the morning and one in the afternoon. Claimant testified that her position was stressful. She would take a walk during her breaks to manage her stress. Other workers would do so as well. Management was aware of this practice. Indeed, claimant testified that respondent encouraged this by implementing a wellness program through which they gave employees pedometers to track how many steps they took each day. Nothing in the employee manual indicates that an employee cannot leave the premises during a break.

¶ 6      Respondent was injured in two accidents while walking during her breaks. The first occurred on June 6, 2012, when she tripped on a raised piece of concrete about three blocks from respondent's premises. The second occurred on November 14, 2012, when she twisted her ankle and fell about half a block away from respondent's premises.

¶ 7      The arbitrator classified claimant's accidents as stemming from a neutral risk. The risks to which she was exposed were risks to which the general public was also exposed. To the extent that she was exposed to them more than the public, "the frequency was determined by [claimant] herself." Thus, the arbitrator concluded, claimant's accidents did not arise out of her employment with respondent. Relying on *Eagle Discount Supermarket v. Industrial Comm'n*, 82 Ill. 2d 331, 338 (1980), the arbitrator further concluded that as the accidents occurred off of respondent's

premises, neither occurred in the course of employment. The arbitrator also expressly found that the personal-comfort doctrine did not apply.

¶ 8     The Commission affirmed, adopting the decision of the arbitrator. One Commissioner specially concurred. She initially observed that an employee travelling to or from work generally may recover only if the accident occurred in a parking lot controlled by the employer or if the employee is in a place required by the employer and exposed to a risk to a greater degree than the general public. She explained that neither condition was present here. She further noted that claimant had not established that her accidents arose out of employment, as claimant did not know what caused her second fall and there was no evidence that the raised concrete she tripped on precipitating her first fall was in any way defective or unusual. The circuit court confirmed, and this appeal followed.

¶ 9                                   III. ANALYSIS

¶ 10    Claimant now asserts that the Commission's decision that her injuries did not arise out of and occur in the course of employment is contrary to the manifest weight of the evidence. Of course, an injury must arise out of and occur in the course of employment to be compensable. *Caterpillar v. Industrial Comm'n*, 129 Ill. 2d 52, 57 (1989). An injury arises out of employment if it results from some risk connected to the claimant's job. *Id.* at 58. That is, the risk either must be connected to "what an employee has to do in fulfilling his duties" or the employment must expose the claimant to the risk to a greater degree than the general public. *Id*. The in-the-course-of element "refers to the time, place and circumstances under which the accident occurred." *Illinois Bell Telephone Co. v. Industrial Comm'n*, 131 Ill. 2d 478, 483 (1989).

¶ 11    Whether an accident arises out of and occurs in the course of employment is a question of fact. *Springfield Urban League v. Illinois Workers' Compensation Comm'n*, 2013 IL App (4th)

120219WC, ¶ 24. Accordingly, review is conducted using the manifest-weight standard. *Id.* A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent. *Id.* We may affirm on any basis appearing in the record. *Comfort Masters v. Illinois Workers' Compensation Comm'n*, 382 Ill. App. 3d 1043m, 1045-56 (2008).

¶ 12     Resolution of this appeal is controlled, in large part, by *Eagle Discount Supermarket*, 82 Ill. 2d 331. In that case, the claimant was injured when engaged in a recreational activity (frisbee) on the employer's premises during his unpaid lunch break. *Id.* at 338. The court looked to three lines of cases for guidance in resolving that appeal: recreational-activities cases, lunch-hour cases, and cases involving the personal-comfort-doctrine. *Id.* at 338-39. It first noted that analyzing the issue before it as a recreational-activity case would lead to the conclusion that the injury was compensable, as there was "sufficient employer sponsorship to render the activity incidental to the employment, that is, the recreational activity was an accepted, regular and normal one which occurred on the premises during an authorized lunch break." In this case, similarly, respondent was aware of the practice and even encouraged it by giving employees pedometers. Moreover, claimant's activities arguably would fall within the ambit of the personal-comfort doctrine (at least if they had been performed on respondent's premises). See, *e.g.*, *Union Starch, Division of Miles Laboratories, Inc. v. Industrial Comm'n*, 56 Ill. 2d 272, 277 (1974) ("Generally, acts of personal comfort, such as getting fresh air, are deemed reasonable, and injuries sustained by employees falling from roofs or windows when trying to obtain relief from heat or stuffiness of the working conditions are found to be incurred 'in the course of' employment.").

¶ 13     However, the *Eagle* court then noted that, "[i]n the lunch hour cases, the most critical factor in determining whether the accident arose out of and in the course of employment is the location of the occurrence." *Eagle Discount Supermarket*, 82 Ill. 2d at 339. In that case, the employee was

injured on the employer's premises, so the injury was deemed compensable. Here, conversely, it is undisputed that claimant's injuries were sustained while she was off respondent's premises. Thus, "the most critical factor" in this case militates against an award. See also *Lynch Special Services v. Industrial Comm'n*, 76 Ill. 2d 81, 91-92 (1979) (no compensation for injury occurring while employee left employer's premises, with employer's consent, to go across the street and purchase food).

¶ 14    Claimant acknowledges the hurdle that *Eagle* presents. She points out that *Eagle* involved a lunch break while this case did not. This distinction does not strike us as significant, and claimant offers no authority recognizing such a distinction or otherwise explains why it is significant. She also contends that applying *Eagle* in cases like this one could lead to anomalous results: "By finding that [claimant] cannot claim an act of personal comfort to be in the course of employment just because the employer didn't own its premises will treat [claimant] differently than similarly situated employees who can engage in the same personal comfort and remain in the course of their employment as long as their employer owned the premises." In our opinion, these two groups of employees would not be similarly situated. Quite simply, one is exposed to a risk within the employer's control and the other is subject to a risk outside the employer's control. This is significant. In *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, (1987), the supreme court, addressing *Eagle* and other similar cases, explained, "These cases are clearly distinguishable from the instant case, where the injuries here resulted from assumed risks, strictly personal and totally unrelated to the duties of employment or the conditions of the employer's premises." In short, we cannot conclude that the Commission's decision that claimant's injury did not occur in the course of employment is contrary to the manifest weight of the evidence.

¶ 15    Moreover, the Commission (adopting the decision of the arbitrator) found that claimant's injuries did not arise out of employment. It first noted that claimant was not required to take walks, implicitly finding that the risk to which claimant was exposed was not incidental to her employment. See *McAllister v. Illinois Workers' Compensation Comm'n*, 2019 IL App (1st) 162747WC, ¶ 29. Further, it determined that the risk was common to the general public and claimant's employment did not cause her to be exposed to it to a greater degree. The concurring commissioner noted the complete lack of evidence regarding the cause of the second fall and that only limited, insufficient evidence existed regarding the cause (raised concrete) of the first one.

¶ 16    Claimant cites *Chicago Extruded Metals v. Industrial Comm'n*, 77 Ill. 2d 81 (1979) (claimant does not provide pinpoint citations to this case, needlessly hampering our review), in arguing that her injuries arose out of employment. That case involved a known defect in the employer's premises. The claimant climbed on a stool in a company shower to swat a cockroach. *Id.* at 85. The reviewing court treated the cockroach as a defective condition:

> "The insect, the Commission could reasonably find, triggered a feeling of distaste. The claimant's reaction was understandable and not unreasonable. The shower and locker rooms were intended and expected by the respondent to be in a sanitary condition."

Conversely, here, little is known about the cause of claimant's two falls. Of course, it is claimant's burden to prove every element of her claim, "particularly the prerequisite that the injury complained of arose out of and in the course of employment." *Johnson Outboards v. Industrial Comm'n*, 77 Ill. 2d 67, 69-70 (1979). Claimant has not carried that burden. See *Builders Square, Inc. v. Industrial Comm'n*, 339 Ill. App. 3d 1006, 1010 (2000) ("A claimant's burden of proof requires more than merely showing inability to explain why a fall occurred.").

¶ 17                                    IV. CONCLUSION

2020 IL App (3d) 190491WC-U

¶ 18   In light of the foregoing, the judgment of the circuit court of Peoria County confirming the decision of the Commission is affirmed.

¶ 19   Affirmed.

-7-